# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NELSON D. EDWARDS, SHERRI L. EDWARDS, SHAWNA A. WALKER, Minor, by Parent, SHAWNA F. EDWARDS, <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL JOLIFF-BLAKE, ARTURO V. BRACHO, ANDREW J. BELUSO, CARLOS A. SANCHEZ, ALEJANDRO LAGUNAS, SHERRY L. BUCKNER, ANTONIO HERRERA, MICHAEL A. CANTORE, RICO L. CARTER, DARIUS J. REED, EDWARD J. SULLINS, NEIL J. SKIPPER, UNKNOWN OFFICERS OF THE CHICAGO POLICE DEPARTMENT, and CITY OF CHICAGO, <br><br> Defendants. | No. 13 C 4558 <br><br> Judge Jorge L. Alonso |

## MEMORANDUM OPINION AND ORDER

In this civil rights action, plaintiffs filed a motion for leave to amend the complaint to add a *Monell* claim against the defendant City of Chicago ("the City"). The motion for leave to amend was fully briefed by the parties. On May 7, 2015, this Court held a status hearing, during which it granted plaintiff's motion. Counsel for the City did not attend the status hearing, and it filed a motion for reconsideration. The Court construed the motion to reconsider as a motion to dismiss, and the parties have briefed the motion. Upon consideration of all the arguments raised both in the earlier briefing on plaintiffs' motion for leave to amend and the recent briefing of the present motion, the Court grants defendant's motion to dismiss the Third Amended Complaint's *Monell* claim.

## LEGAL STANDARDS

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis omitted).

Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

## ANALYSIS

Plaintiffs have amended their complaint to add Count XI, in which they allege that the City is liable, under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), for its police officers' practice, pursuant to an express policy and widespread custom, of

obtaining search warrants based on information provided by anonymous "John Doe" informants, without verifying the reliability of the information. This policy and practice leads to searches without probable cause, in violation of the constitutional rights of plaintiffs and others who allegedly endure unconstitutional searches by the Chicago police.

Plaintiffs' proposed *Monell* count includes a number of details concerning the Chicago Police Department's ("CPD") search warrant procedures and training program. Plaintiffs allege that (1) CPD has no system for keeping track of John Doe informants or retaining any information about them, such as biographical information or information on whether their tips have proved useful and reliable in the past (3d Am. Compl. ¶¶ 74(c)); (2) officers receive inadequate training concerning when a tip is probable cause for a search, considering that the search warrant course they take essentially teaches them only that they must subjectively believe that the informant's tip provides probable cause for a search, with few other restrictions (*id.*); and (3) CPD has no system for keeping track of instances in which police officers use John Doe informants irresponsibly or improperly in procuring search warrants and holding the officers accountable for their abuses (*id.*).

The City argues that plaintiffs fail to state a valid *Monell* claim because they do not plausibly allege that the City has any policy or practice that causes searches without probable cause. The Court agrees.

First, plaintiffs' claim that the City's practice of failing to keep records on John Doe informants causes Fourth Amendment violations ignores the fact that John Doe informants wish to remain anonymous, by definition, according to the written CPD policy that plaintiffs themselves cite, Department Special Order 07-06. (Resp. Opp. Leave to File 3d Am. Compl., ECF No. 153, Ex. A, IV.A.1.b.) In this way, John Doe informants are distinct from the other

classes of CPD informants: "unregistered cooperating individuals," who are not formally registered and do not receive any compensation for their effort, although CPD documents their efforts by keeping files on them (*id.*, Ex. A, IV.B.); and "registered cooperating individuals," who formally register with CPD's Organized Crime Division and may receive compensation (*id.*, Ex. A, IV.C.). If CPD kept records on John Doe informants, there would be little to distinguish John Doe informants from unregistered cooperating individuals. Presumably, the city's policy provides for a separate class of John Doe informants precisely because some people with useful information may want to come forward without revealing their names or any information by which they could be later identified, perhaps for fear of retribution by the offenders on whom they are informing. If the police ask for personal information from John Doe informants or betray that they are keeping records on them, John Doe informants might be unwilling to cooperate. The Fourth Amendment does not require the police to run this risk; officers simply must meet a higher standard of corroboration or reliability in order to use the John Doe informant's information as probable cause for a search warrant. *See, e.g., Illinois v. Gates*, 462 U.S. 213, 242 (1983).

That the police meet that higher standard is safeguarded not only by CPD's training procedures but also by the approval process officers must navigate to get a search warrant. Importantly, plaintiffs themselves allege that officers are taught that they must subjectively believe that a John Doe informant's information is reliable enough to provide probable cause.[1] (3d Am. Compl. ¶ 74(i).) Further the very same written CPD policy that plaintiffs themselves

---

[1] With regard to plaintiffs' allegations that CPD officers receive training and instruction on probable cause that does not comport with the Fourth Amendment and induces officers to act inconsistently with the requirements of the Fourth Amendment, the Court agrees with the City that many of the allegedly erroneous principles taught in the City's training courses or programs are actually consistent with the Fourth Amendment, unrelated to it or unlikely to cause improper search warrants to issue.

cite, Department Special Order 07-06, requires officers to seek approval from a police supervisor and either a City attorney or a Cook County State's Attorney, and then bring the anonymous informant before the judge whom the officer requests to issue the warrant. Under this policy, a proposed search warrant based on a John Doe informant's information must survive three levels of review (supervisor, attorney, judge) before the warrant is actually issued.

This multi-level approval process ensures that the final determination as to whether there is probable cause is left to a judge, a neutral party possessing extensive experience and legal training, who only reviews the proposed search warrant after a police supervisor and attorney, two people with greater experience and training than the requesting officer, agree that there is probable cause. The Court fails to see the flaw in this process that causes baseless search warrants to issue. Certainly, a rogue officer may put forth the John Doe informant's information in bad faith, but he would do so not pursuant to a CPD policy or practice but in contravention of one, and the multi-level review process, far from fostering improper search warrants, makes it less likely that they will actually issue. To state a *Monell* claim, plaintiffs must plausibly allege that CPD has a policy or practice that is the "moving force" behind the alleged constitutional violations. *See Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 306 (7th Cir. 2010). Plaintiffs do not allege such the requisite causal connection between any CPD policy or practice and any constitutional violations.

With regard to whether CPD causes Fourth Amendment violations by failing to have "an effective disciplinary system that investigates police misconduct in the procurement of a warrant" (3d Am. Compl. ¶ 74(k)), the Court agrees with the City that, because plaintiffs have not plausibly alleged that the City is responsible for a widespread practice of police seeking improper John Doe search warrants, plaintiffs' allegation that the City has failed to institute a

system to discipline officers who seek improper John Doe search warrants fails to state a *Monell* claim. Plaintiffs provide no facts to support any claim that baseless John Doe search warrants are a widespread problem, *c.f. Sledd v. Lindsay*, 102 F.2d 282, 287 (7th Cir. 1996) (complaint alleged details such as the number of excessive force complaints against CPD, the number of excessive force complaints investigated and the number of excessive force complaints CPD investigators believed had merit); indeed, to the extent plaintiffs provide specific facts, they tend to support the opposite conclusion. Ostensibly in support of the claim that the lack of an effective disciplinary system causes constitutional violations, plaintiffs allege that a CPD police Internal Affairs sergeant has testified in another case that he is unaware of a widespread problem of intentionally illegal searches, having always found illegal searches to be an "honest mistake." (3d Am. Compl. ¶ 74(k).) Far from plausibly alleging that the City's practice causes widespread constitutional violations, this allegation tends, at worst, to disprove that proposition, and at best merely states plaintiffs' intention to engage in a fishing expedition. *See Armour v. Country Club Hills*, No. 11 C 5029, 2014 WL 63850, at *7 (N.D. Ill. Jan. 8, 2014).

Plaintiffs' allegations tend to show that, far from causing constitutional violations, CPD search warrant training and procurement policies tend to prevent them. Plaintiffs do not plausibly allege that any CPD policy is the "moving force" behind alleged constitutional violations. *Thomas*, 604 F.3d at 306. Their *Monell* claim cannot withstand the City's motion to dismiss.

## **CONCLUSION**

For the reasons set forth above, the Court grants the City's motion [195], which this Court has construed as a motion to dismiss plaintiffs' *Monell* claim, Count XI of the Third Amended Complaint.

**SO ORDERED.**

**ENTERED: July 8, 2015**

**HON. JORGE L. ALONSO**
**United States District Judge**