**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **NELSON D. EDWARDS, SHERRI L.** | ) | |
| **EDWARDS, SHAWNA A. WALKER,** | ) | |
| **Minor, by Parent, SHAWNA F.** | ) | |
| **EDWARDS,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No. 13 C 4558** |
| **v.** | ) | |
| | ) | **Judge Jorge L. Alonso** |
| **MICHAEL JOLIFF-BLAKE, ARTURO** | ) | |
| **V. BRACHO, ANDREW J. BELUSO,** | ) | |
| **CARLOS A. SANCHEZ, ALEJANDRO** | ) | |
| **LAGUNAS, SHERRY L. BUCKNER,** | ) | |
| **ANTONIO HERRERA, MICHAEL A.** | ) | |
| **CANTORE, RICO L. CARTER,** | ) | |
| **DARIUS J. REED, EDWARD J. SULLINS,** | ) | |
| **NEIL J. SKIPPER, UNKNOWN** | ) | |
| **OFFICERS OF THE CHICAGO POLICE** | ) | |
| **DEPARTMENT, and CITY OF CHICAGO,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Nelson Edwards, Sherri Edwards, Shawna Walker, and Shawna Edwards have

brought this lawsuit against defendants, Officer Michael Joliff-Blake, numerous other Chicago

police officers, and the City of Chicago, for violating their civil rights by procuring and

executing a warrant to search their home without probable cause. The parties have filed cross-

motions for summary judgment. For the reasons set forth below, defendants' motion is granted,

and plaintiffs' motion is denied.

## BACKGROUND

Plaintiff Nelson Edwards, a retiree, owns a house at 827 South Keeler Avenue in

Chicago, where he lives with plaintiffs Sherri Edwards, Shawna Edwards, and Shawna Walker,

his daughters and granddaughter.  On June 20, 2012, a number of Chicago police officers entered and searched the home for drugs pursuant to a search warrant.  The warrant was based on information received from a confidential informant, who had reported purchasing drugs in that house from a man known to him as Fred, later further identified as Freddy Sutton.  The officers searched the house for an hour and a half or more, detaining Shawna Edwards and Shawna Walker in the living room and preventing Nelson Edwards and Sherri Edwards from entering the house while they searched, even physically restraining Nelson Edwards when he tried to rush past them into the house.  The officers found no illicit drugs, nor did they find Freddy Sutton; the plaintiffs informed the officers that he had never resided there, and they claimed not to know him.  According to the declaration he submitted in this case, Freddy Sutton lived at 3938 West Lexington Street, nearly half a mile from 827 South Keeler, and he had known Nelson Edwards's son when they were children, but he was otherwise unacquainted with the Edwards family.  (Decl. Frederick Sutton, Pls.' 56.1(a)(3) Stmt., Ex. 8, ECF No. 259-8.)

Defendant Officer Michael Joliff-Blake obtained the warrant to search the premises at 827 South Keeler after meeting with the confidential informant, whom he referred to as "J. Doe," at the police station on June 16, 2012.  J. Doe told Officer Joliff-Blake that he had purchased heroin from Fred in the house at 827 South Keeler that morning.  Officer Joliff-Blake prepared a "Complaint for Search Warrant" in which he related J. Doe's account of the transaction as follows:

> J. Doe stated that for approximately the past two months, J. Doe has on numerous times, obtained heroin from a male known to J. Doe as Fred (n.k.a. [*sic*] Freddy Sutton)-described by J. Doe as a male, black, 6'02", 215 lbs., black hair, brown eyes, who resides at 827 S. Keeler, Chicago, Cook County, Illinois.  J. Doe stated that Fred conducts his narcotics operations from the basement of the residence located at 827 S. Keeler.
> J. Doe walked into the yard of the residence to the back door.  J. Doe knocked on the back door and Fred opened the door and invited J. Doe into the

residence, into the basement. J. Doe then asked Fred for 3 bags of 'blow.' (Blow being street terminology for a small quantity of heroin). While continuing to wait, Fred relocated to the upstairs of the residence and return [*sic*] with a large plastic bag containing over 100 ziplock baggies containing white powder-heroin. Fred reached in the large plastic bag and removed 3 ziplock baggies and gave them to J. Doe and in return tendered $30.00usc [*sic*] ($10.00 per ziplock baggies) [*sic*]. J. Doe inspected the 3 small baggies and found them to be packaged in the same manner as prior purchases and contained the same amount of heroin inside. J. Doe then exited the residence and on the way out Fred called out "Anytime you need anything, bro, come by, I got what you need night and day." J. Doe then left the residence and after finding a safe place to hide, ingested the above mentioned heroin using intravenous method. J. Doe then related the euphoric experience was similar to past experience and that the quality of the heroin was exceptional. J. Doe further related that he/she has been using heroin for over 2 years. J. Doe further related that the amount and quality of the heroin is exceptional for the price.

(Compl. for Search Warrant, Parties' Stmt. Undisputed Material Facts, Joint Exs., Ex. B, ECF No. 257-2.) According to the Complaint for Search Warrant, Officer Joliff-Blake showed J. Doe a photo of the residence at 827 South Keeler, which he found on the Cook County Assessor's Office website, and J. Doe identified the residence in the photo as the residence where he purchased the heroin from Fred. (*Id.*) Additionally, Officer Joliff-Blake stated that he and J. Doe had "relocated" to 827 South Keeler, and J. Doe pointed at the residence at that address to identify it as the building in which he had purchased heroin from Fred. (*Id.*) Officer Joliff-Blake also stated in the Complaint for Search Warrant that he had used a Chicago Police Department database to obtain a photograph of a man named Freddy Sutton, and J. Doe identified the man as the same Fred who had sold him the heroin that morning. (*Id.*)

At his deposition in this case, years after the search of the Edwards residence, Officer Joliff-Blake elaborated on some of the details of the investigation described in the Complaint for Search Warrant. He explained that J. Doe told him that he purchased heroin from Fred at a two-story residence near the corner of Arthington and Keeler. (*Id.*, Ex. G-1, at 117:23-18:4, ECF No. 257-7.) Based on J. Doe's description, Officer Joliff-Blake pulled from the Cook County

Assessor's website the picture of the house at 827 South Keeler, which lies on the northeast corner of Arthington and Keeler (*id.*, Ex. G-1, at 161:17-62:16), and J. Doe identified the house in the picture as the one where he had purchased heroin from Fred. Later that day, Officer Joliff-Blake drove J. Doe past the house twice, going in a different direction each time, and both times J. Doe pointed at 827 South Keeler and identified it as the house where he had purchased heroin from Fred. (*Id.*, Ex. G-1, at 206:7-07:25.)

Additionally, Officer Joliff-Blake explained at his deposition that J. Doe had not known Fred's last name. (*Id.*, Ex. G-1, at 117:5-22.) To determine exactly who "Fred" was, Officer Joliff-Blake used police databases to search for people named Fred who had been arrested by officers working beat number 1132, the beat covering the area of Arthington and Keeler, or who were known to live in that area. (*Id.*, Ex. G-1, at 142:3-44:25.) The query returned approximately ten Freds. (*Id.*, Ex. G-1, at 145:1-9.) Officer Joliff-Blake narrowed them down by checking them against the description J. Doe had provided and assembled a photo array of about six photos, including the photo of Freddy Sutton. (*Id.*, Ex. G-1, at 145:24-46:25.) He showed the photo array to J. Doe, who identified Freddy Sutton as the "Fred" who had sold him heroin. (*Id.*, Ex. G-1, at 142:3-46:18-19.)

After drafting the Complaint for Search Warrant based on the June 16, 2012 meeting with J. Doe, Officer Joliff-Blake sought approval of the Complaint for Search Warrant from a supervisor, Lieutenant Skipper, and an assistant state's attorney, both of whom signed off on the Complaint for Search Warrant by affixing their names and the date and time. The next day, Officer Joliff-Blake presented the Complaint for Search Warrant and a draft search warrant to Judge Gloria Chevere of the Circuit Court of Cook County. Officer Joliff-Blake also presented the J. Doe informant and a record of his criminal history (*id.*, Ex. G-1, at 220:8-11; *id.*, Ex. B, at

2), which included arrests for panhandling in a prohibited manner and identity theft for using his mother's debit card at ATMs without her permission (Pls.' LR 56.1(a)(3) Stmt. ¶ 11, ECF No. 263). Judge Chevere swore in J. Doe and questioned him, although the record does not reveal what she asked him. (*See* Parties' Stmt. Undisputed Material Facts, Joint Exs., Ex. G-1, at 222:6-23:12, *see also id.*, Ex. S-1, 39:1-2, ECF No. 268-1.)

Plaintiffs subsequently brought this lawsuit against the City of Chicago and the police officers who were involved in procuring and executing the warrant, claiming that defendants violated their Fourth Amendment rights by procuring and executing a search warrant that was unsupported by probable cause. The complaint consists of ten counts[1]: Count I, procuring a warrant to search plaintiffs' home based on unreliable information and misrepresentation; Count II, entering plaintiffs' home without a valid warrant or probable cause; Count III, searching plaintiffs' home without a valid warrant or probable cause; Count IV, seizing and detaining plaintiffs without a valid warrant or probable cause; Count V, using excessive force to detain Nelson Edwards and Shawna Walker; Count VI, battery under Illinois law; Count VII, supervisory liability against Sergeant Sullins, the police officer in charge of the execution of the warrant at 827 South Keeler; Count VIII, supervisory liability against Lieutenant Skipper, the police officer who approved Officer Joliff-Blake's Complaint for Search Warrant before he presented it to Judge Chevere; Count IX, for violating plaintiffs' Fourth Amendment rights by failing to intervene to stop unconstitutional conduct; and Count X, against the City of Chicago for indemnification of the individual defendants. (3d Am. Compl., ECF No. 187.)

## ANALYSIS

The parties have each filed motions for summary judgment. Defendants seek judgment

---

[1] This Court previously dismissed Count XI, the *Monell* claim against the City of Chicago. (*See* Mem. Op. & Order, ECF No. 217.)

on all counts; plaintiffs contend that there are genuine, material factual disputes on Counts V, VI and X, so they seek judgment only on Counts I-IV, VII, VIII and IX, and only on liability. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering such a motion, the Court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. *See Kvapil v. Chippewa Cty., Wis.*, 752 F.3d 708, 712 (7th Cir. 2014). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Talanda v. KFC Nat'l Mgmt. Co.*, 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 681-82 (7th Cir. 2014). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013).

Plaintiffs bring this civil suit against defendants pursuant to 42 U.S.C. § 1983, which creates a cause of action against any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." *Id.* Plaintiffs' claims are rooted in the Fourth Amendment, which guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV.

"Probable cause is established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a

search will uncover evidence of a crime." *United States v. Peck*, 317 F.3d 754, 756 (7th Cir. 2003). A judge's decision to issue a warrant based on her determination that there is probable cause is entitled to "great deference." *United States v. Carson*, 582 F.3d 827, 831 (7th Cir. 2009). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (internal quotation marks omitted). When the information in the affidavit has been provided by an informant, whether the information is sufficiently reliable to support a determination of probable cause depends on factors such as whether the information is based on "[1] the personal observations of the confidential informant ("CI"), [2] the degree of detail given in the affidavit, [3] independent police corroboration of the information, [4] the interval of time between the events and application for a warrant, and [5] whether the informant testified at the probable cause hearing." *Peck*, 317 F.3d at 756. None of these factors is determinative by itself; "a deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability." *Id.* (citing *United States v. Brack,* 188 F.3d 748, 756 (7th Cir. 1999).

## I.     VALIDITY OF WARRANT

Plaintiffs contend that the search warrant was invalid because it is clear on the face of the Complaint for Search Warrant that there was no probable cause to search the house at 827 South Keeler. According to plaintiffs, the Complaint for Search Warrant suffered from a number of deficiencies: (1) it does not establish J. Doe's reliability, omitting to state even conclusorily that he had provided reliable information to police in the past or was otherwise known to be reliable;

(2) it does not explain how Officer Joliff-Blake, the complaining officer, determined that "Fred" was Freddy Sutton by assembling a photo array and showing it to J. Doe; (3) it does not explain how Officer Joliff-Blake connected the house J. Doe described to the house at 827 South Keeler by pulling the picture of the house from the Cook County Assessor's website and showing it to J. Doe; (4) it provides no motive for J. Doe to testify against Fred; and (5) it contains no facts independently corroborating that criminal activity was taking place at 827 South Keeler.

Defendants respond that plaintiffs have mischaracterized the contents of the Complaint for Search Warrant and that case law establishes that the facts in the Complaint for Search Warrant were sufficient to support a determination of probable cause in the totality of the circumstances. The Court agrees.

First, while plaintiffs are correct that the Complaint for Search Warrant contains no statement to the effect that J. Doe is known to be reliable because he has provided reliable information in other cases, there is no need for the Complaint for Search Warrant to contain any such statement. In the absence of any record of past reliability, an issuing magistrate must simply assume that the police have not worked with this informant before, which does not necessarily mean that his information is unreliable. *See United States v. Koerth*, 312 F.3d 862, 867-68 (7th Cir. 2002) ("Statements from an informant of unknown reliability may in certain instances serve to establish probable cause if, under the totality of the circumstances, a reasonable person might consider that the statements are worthy of credence."); *Guzman v. City of Chi.*, 565 F.3d 393, 396 (7th Cir. 2009) ("[Plaintiff] argues that [the officers] should have . . . told the judge that this was the first time Doe had provided information so they were limited in their assessment of his reliability. We doubt that would have made a difference. At the beginning of his work with the police, every informant necessarily provides information for the

first time.").  An informant's tip may carry other indicia of reliability, such as a basis in first-hand knowledge and the inclusion of specific, granular details.  *See United States v. Lloyd*, 71 F.3d 1256, 1263 (7th Cir. 1995); *see also United States v. Mullins*, 803 F.3d 858, 863 (7th Cir. 2015) (comparing *Lloyd*, in which the confidential informant provided a detailed tip based on first-hand knowledge and officers were able to independently verify some of the details, with *Peck*, in which the tip was insufficiently detailed because the informant merely reported that she had been in the target's house and was shown a substance she thought was an illicit drug and there was no independent verification).  Additionally, an informant's tip is more reliable if it provides information that is against the informant's own penal interest.  *See Peck*, 317 F.3d at 756-57 (citing *United States v. Johnson*, 289 F.3d 1034, 1036 (7th Cir. 2002), and *United States v. Jones*, 208 F.3d 603, 606 (7th Cir. 2000) (in both cases, informants' statements that they knew the substances at issue were illicit drugs were reliable because, against their own penal interests, they admitted that they had personal experience buying and selling large quantities of drugs)).  In this case, J. Doe stated that he had first-hand knowledge that Fred was selling heroin, having personally purchased heroin from Fred and used it one day before he appeared before a judge and swore that his detailed account of the transaction was truthful.  Further, the police had corroborated at least some details, as the Court will discuss more thoroughly below.  There were substantial indicia of reliability, even without a statement that J. Doe was known by Officer Joliff-Blake to be credible and reliable.

Plaintiff makes much of the fact that the Complaint for Search Warrant did not describe how Officer Joliff-Blake used a photo array to determine that "Fred" was Freddy Sutton or how he showed J. Doe a picture of the house at 827 South Keeler to identify it as the house at the corner of Arthington and Keeler where J. Doe purchased heroin.  But the Court fails to see why

the Complaint for Search Warrant was required to contain such descriptions in order for the warrant to be facially valid. The Complaint for Search Warrant suggests that these details came from J. Doe, which they did. J. Doe provided a detailed, first-hand account of a recent narcotics transaction in which he participated; there is nothing unreasonable on its face about the Complaint for Search Warrant merely because it states that J. Doe was able to identify the heroin dealer with whom he personally interacted and the house in which he purchased heroin from him.

This is particularly true because J. Doe's account was at least "minimally" corroborated. *See United States v. Glover*, 755 F.3d 811, 817 (7th Cir. 2014). Plaintiffs insist that there was no corroboration because the police never obtained an independent source for any of the information J. Doe provided; merely driving past the house at 827 South Keeler to confirm that it was the one J. Doe had already identified, or showing J. Doe a photo array of Freds to determine whether he purchased heroin from any of them, "sheds little light on the central question whether [heroin] was being trafficked at the premises" located at 827 South Keeler because J. Doe remains the only source of information. *See United States v. Robinson*, 724 F.3d 878, 885 (7th Cir. 2013). Plaintiffs are correct that corroboration of only innocent facts does little to support the accusation of wrongdoing, *id.*, but they ignore the fact that it helps with the "important" task of ensuring "accuracy on these innocent facts." *United States v. Dismuke*, 593 F.3d 582, 588 (7th Cir. 2010) *abrogated on other grounds as recognized by Glover*, 755 F.3d at 817. Driving past the targeted house with the J. Doe, after he had already identified a photo of the house, provided Officer Joliff-Blake with "at least some limited amount of additional information" because it confirmed that there really is a house at 827 South Keeler (rather than, for example, a "delicatessen," *Dismuke*, 593 F.3d at 884), that it is the same house pictured in the Cook County

Assessor's office photo, and that J. Doe still believed it was the house in which he had purchased the heroin even as he changed his perspective by viewing it in person from the surrounding streets, rather than in a photo. As for the identification of Freddy Sutton as "Fred," while plaintiffs are correct that this too does nothing to corroborate illegal drug activity at 827 South Keeler, it at least confirms that police were independently aware of a person named Fred who lived in the neighborhood. These facts added, at least marginally, to the reliability of J. Doe's account.

Adding more substantially to the reliability of J. Doe's account is that he accompanied Officer Joliff-Blake to present the Complaint for Search Warrant to Judge Chevere, which "[gave] the issuing [judge] an opportunity 'to evaluate the informant's knowledge, demeanor, and sincerity.'" *Robinson*, 724 F.3d at 884 (quoting *United States v. Sims,* 551 F.3d 640, 644 (7th Cir. 2008)). Plaintiffs argue, based on *Glover*, 755 F.3d at 817-18, that this fact "bolsters the reliability" of the Complaint for Search Warrant only "slightly," if at all, because there is no record of any testimony before Judge Chevere, and "[w]ithout any record we must assume that Doe did not testify." But plaintiffs read too much into *Glover* in this respect. In *Glover*, the John Doe informant appeared before the issuing judge and signed the affidavit, but it was unclear whether the issuing judge asked any questions of the confidential informant at all, *see United States v. Glover*, No. 10 CR 981, 2013 WL 788081, at *2 (N.D. Ill. Mar. 1, 2013) ("We have no evidence one way or the other as to whether Judge Skryd asked any questions of Doe."), *rev'd*, 755 F.3d 811 (7th Cir. 2014). More importantly, the applicant officer in *Glover* completely omitted to provide "known, highly relevant, and damaging information about Doe's credibility— his criminal record, especially while serving as an informant; his gang activity; his prior use of aliases to deceive police; and his expectation of payment." 755 F.3d at 817. In this case, both J.

Doe and Officer Joliff-Blake testified that Judge Chevere did ask J. Doe questions. (Parties' Stmt. of Undisputed Material Facts, Joint Ex. G-1, at 222:6-23:12; *id.*, Ex. S-1, 39:1-2, ECF No. 268-1.) Officer Joliff-Blake did not have information about J. Doe's background as damaging as the information the applicant officer had in *Glover*, and, as the Court will discuss in more detail below, Officer Joliff-Blake disclosed to Judge Chevere whatever information he had. He presented J. Doe's criminal history to Judge Chevere along with the Complaint for Search Warrant,[2] and the Complaint for Search Warrant itself described in detail J. Doe's commission of a crime by purchasing and using heroin.

For these reasons, the Court finds this case less similar to *Glover* than to *Lloyd*, in which the Seventh Circuit "recognize[d] that when a [confidential informant] accompanies the officer and is available to give testimony before the judge issuing the warrant, his presence adds to the reliability of the information used to obtain the warrant, because it provides the judge with an opportunity to 'assess the informant's credibility and allay any concerns [s]he might have had about the veracity of the informant's statements.'" 71 F.3d at 1263 (quoting *United States v. Causey,* 9 F.3d 1341, 1343 (7th Cir. 1993)). In *Lloyd*, the Seventh Circuit agreed with the trial judge that the issuing judge "obviously found the CI to be credible and the information to be reliable," and "[s]uch findings are entitled to deference on review." *Id.*

Plaintiffs also argue that the warrant was invalid because the Complaint for Search Warrant does not address J. Doe's motive to cooperate with police, and while a motive may be useful in evaluating the reliability of an informant's testimony, the issuing judge need not have evidence of the motive if the account is otherwise reliable. *See Gates*, 462 U.S. at 234 ("[E]ven

---

[2] Plaintiffs purport to deny that Officer Joliff-Blake presented J. Doe's criminal history to the issuing judge, but they cite no evidence. (Pls.' LR 56.1 Resp. ¶ 16, ECF No. 288.) This bare denial is insufficient to demonstrate a genuine factual dispute at the summary judgment stage.

if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case.").

Weighing the five factors the Seventh Circuit uses to assess whether an informant's tip is sufficiently reliable to provide probable cause, *see Peck*, 317 F.3d at 756, all but one supports the issuing judge's conclusion that there was probable cause for the warrant. J. Doe acquired the information based on firsthand observations; he described the drug transaction in detail; the drug transaction he described took place only one day before Officer Joliff-Blake presented the Complaint for Search Warrant to the issuing judge; and J. Doe appeared before the issuing judge and answered her questions. The only factor weighing against probable cause is that the police only minimally corroborated J. Doe's account of the transaction in innocent details; they verified some innocent facts, but the only source of facts concerning drug activity at 827 South Keeler was J. Doe himself. But in that respect this case is similar to *Dismuke*, in which the Seventh Circuit concluded, although it was a "close case," that the affidavit was "just barely" sufficient to establish probable cause. 593 F.3d at 588; *cf. United States v. Bell*, 585 F.3d 1045, 1050 (7th Cir. 2009) (sparsely detailed affidavit did not support probable cause in part because, unlike in this case, it did not reveal "how [the informant] and [the target] knew each other or what [the informant] was doing in [the target's] apartment"); *Koerth*, 312 F.3d at 867-68 (sparsely detailed affidavit did not support probable cause in part because, unlike in this case, the informant did not appear before the issuing judge).

*Glover* may seem to have similar facts, but that case is distinguishable[3] because, unlike

---

[3] Plaintiffs also rely heavily on *Robinson*, but that case is even less apposite: in *Robinson*, the Seventh Circuit did not rule at all on whether the warrant was validly supported by probable cause, instead ruling that, even if not, the good-faith exception applied. 724 F.3d at 885.

the applicant officer in that case, Officer Joliff-Blake did not hide J. Doe's criminal history. *See Jones v. City of Chi.*, No. 14 C 4023, 2016 WL 1730647, at *4 (N.D. Ill. May 2, 2016); *United States v. Hawthorne*, No. 13 CR 772-19, 2014 WL 5461074, at *4 (N.D. Ill. Oct. 2, 2014) (both distinguishing *Glover* on the same basis). In this case, the issuing judge had a fair opportunity to evaluate J. Doe's credibility and the reliability of his information, and under those circumstances, her conclusion that there was probable cause to support the warrant in this case is entitled to deference. The Court agrees that her decision was correct. The warrant was not invalid for lack of probable cause.

## II.    QUALIFIED IMMUNITY

Even if there were some deficiency in the warrant or Complaint for Search Warrant, Officer Joliff-Blake and the other defendants would still not be liable if they are entitled to qualified immunity. The Seventh Circuit has explained that "an officer who relies on a subsequently invalidated warrant may be liable for § 1983 damages only if the warrant application was 'so lacking in indicia of probable cause as to render official belief in its existence unreasonable.'" *Junkert v. Massey*, 610 F.3d 364, 369 (7th Cir. 2010) (quoting *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986)). The standard is adopted from, and similar to, the standard for the good-faith exception to the exclusionary rule set forth in *United States v. Leon*, 468 U.S. 897 (1984). A warrant application violates this standard only if "(1) courts have clearly held that a materially similar affidavit previously failed to establish probable cause under facts that were indistinguishable from those presented in the case at hand; or (2) the affidavit is so plainly deficient that any reasonably well-trained officer 'would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant.'" *Koerth*, 312 F.3d at 869 (quoting *Malley,* 475 U.S. at 345); *see also Junkert*, 610 F.3d at 369 (quoting the same

language).

### A.  Have Courts Held a Materially Similar Affidavit Insufficient?

Courts have not clearly held that a materially similar affidavit failed to establish probable cause under facts that were indistinguishable from those of this case.  The closest case plaintiffs have identified is *Glover*, but as the Court has explained, that case turned on the fact that the applicant officer omitted to inform the issuing judge of the informant's criminal history and related information damaging to his credibility.  755 F.3d at 817.  In this case, Officer Joliff-Blake did not neglect to provide Judge Chevere with J. Doe's criminal history,[4] the Complaint for Search Warrant itself contained evidence of J. Doe's criminal conduct, and, as the Court will discuss in more detail below, Officer Joliff-Blake did not withhold information damaging to J. Doe's credibility.  This case is distinguishable from *Glover*.  Defendants meet the standard for qualified immunity on the first prong.

### B.  Would a Reasonably Well-Trained Officer Have Known There Was No Probable Cause?

On the second prong of the test for qualified immunity, the Court has already explained that the warrant was not plainly deficient on its face, but plaintiffs argue that defendants are not entitled to qualified immunity because Officer Joliff-Blake "knowingly or intentionally or with a reckless disregard for the truth made false statements" or misleading omissions in applying for the search warrant, and the false statements or omissions were necessary to the issuing judge's determination that there was probable cause to search plaintiffs' home.  *See Suarez v. Town of Ogden Dunes*, 581 F.3d 591, 596 (7th Cir. 2009) (citing *Molina ex rel. Molina v. Cooper*, 325 F.3d 963, 968 (7th Cir.2003)); *see also Beauchamp v. City of Noblesville*, 320 F.3d 733, 742-43 (7th Cir. 2003) (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)).  In their briefs,

---

[4] *See supra* note 2.

plaintiffs recite a litany of purported omissions in long, single-spaced lists of approximately twenty paragraphs stretching across more than two pages. (Pls.' Mem. Supp. Pls.' Mot. Partial Summ. J. at 9-12, ECF No. 269; Pls.' Mem. Resp. Opp'n Defs.' Mot. Summ. J., at 9-11, ECF No. 287.) Defendants argue that all of these omissions are either immaterial to the probable cause determination or illusory because Officer Joliff-Blake actually did disclose the allegedly omitted information. The Court agrees with defendants.

One category of these omissions relates to Officer Joliff-Blake's failure to state that J. Doe was a first-time informant. But Officer Joliff-Blake was not required to specifically state that J. Doe had never worked with police before. Because the Complaint for Search Warrant was silent on the matter of J. Doe's track record, Judge Chevere was required to assume that J. Doe had none, which was the truth. *See Koerth*, 312 F.3d at 867-68. Plaintiffs also suggest that Officer Joliff-Blake hid facts concerning J. Doe's criminal background and history of drug use that would have been useful to Judge Chevere in evaluating J. Doe's credibility and reliability. But the Complaint for Search Warrant belies this contention because it states that J. Doe had been using heroin for over two years, long enough to know that Fred's heroin was "exceptional for the price," and that he had bought heroin from Fred "numerous times" over the two months leading up to the June 16, 2012 transaction. (Compl. for Search Warrant, Parties' Stmt. Undisputed Material Facts, Joint Exs., Ex. B, ECF No. 257-2.) He presented J. Doe's criminal history to Judge Chevere. (*Id.*, Ex. G-1, at 220:8-11; *id.*, Ex. B, at 2.) Most importantly, he presented J. Doe himself to Judge Chevere so she could observe J. Doe's demeanor to assist her evaluation of whether he was providing reliable information.[5]

---

[5] Plaintiffs also make much of what they claim is J. Doe's poor mental health as exhibited by his occasionally bizarre conduct at his deposition, which required three tries to complete. But J. Doe's conduct at a deposition years later provides little insight into how he behaved before Officer Joliff-Blake and Judge Chevere in June 2012.

Another category of omissions relates to Freddy Sutton, the house at 827 South Keeler, and Officer Joliff-Blake's process of using police and internet records to help J. Doe identify them. But as the Court explained above, Officer Joliff-Blake was not required to explain this identification process in greater detail because the end result is that J. Doe identified Freddy Sutton and the house at 827 South Keeler, just as the Complaint for Search Warrant suggests. Plaintiffs cite no evidence to suggest that Officer Joliff-Blake had any reason, at the time he appeared before Judge Chevere, to believe that J. Doe was somehow mistaken or uncertain about which house he had entered to purchase heroin earlier that very day, nor does the Court see why Officer Joliff-Blake should have been overly suspicious about it, given the fact that J. Doe claimed to be a habitual drug user who had bought drugs in this area for months. An officer might reasonably expect a person with a drug habit to be easily able to find and identify the house where he had purchased drugs. Even years later at his deposition, although he could not remember the precise address, J. Doe was adamant that he had purchased drugs at the house he had indicated at the corner of Arthington and "a K- street," the house with the "dog pens." (*Id.*, Ex. S-5, 167:16-21, ECF No. 268-5.) Plaintiff Nelson Edwards admitted at his deposition that he had (and still has) a dog kennel behind his house for his hunting dogs. (*Id.*, Ex. C, at 27:25-28:5, ECF No. 257-3.) It remains unclear exactly where the mistake, misunderstanding, or deception lies in this case, but the evidence does not support the inference that Officer Joliff-Blake intentionally or recklessly hid any suspicion or reason for suspicion that J. Doe had misidentified the person and place involved in the drug transaction.[6]

Plaintiffs make much of the fact that Officer Joliff-Blake might have noticed from the

---

[6] This is particularly true with respect to the house because Officer Joliff-Blake not only used the Cook County Assessor's photograph to help identify it but also drove J. Doe past the house to verify the identification, as he described in the Complaint for Search Warrant.

Cook County Assessor's website or other readily available records that Freddy Sutton was not the owner of record at 827 South Keeler and, in fact, Freddy Sutton's arrest records showed an address at 3938 West Lexington Street, not 827 South Keeler. But noticing these facts would not have proved that Sutton did not "reside" at 827 South Keeler Avenue on June 16, 2012 (*see id.*, Ex. B), or, more importantly, that he was not selling drugs out of the house, and in any case it is "what the police know, not whether they know the truth, that matters" for purposes of probable cause. *London v. Guzman*, 26 F. Supp. 3d 746, 754 (N.D. Ill. 2014) (citing *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1247 (7th Cir. 1994)); *see Jones*, 2016 WL 1730647, at *4 ("Plaintiff does not explain how the validity of the search warrant hinges on where [the target of the search warrant] lived at the time of the drug transactions."). J. Doe told Officer Joliff-Blake that he knew from personal experience as a heroin user that Fred was selling heroin out of the house at 827 South Keeler, J. Doe identified Fred as Freddy Sutton, and Freddy Sutton was known to live in the neighborhood; these facts validly supported Officer Joliff-Blake's belief (and ultimately, Judge Chevere's conclusion) that there was probable cause to search 827 South Keeler for Freddy Sutton's heroin.

Another category of omissions consists of things Officer Joliff-Blake did not do to corroborate the facts recounted in the Complaint for Search Warrant. Plaintiffs do not cite authority for the proposition that Officer Joliff-Blake was required to tell the issuing judge what he did *not* know, and the Court declines to recognize any such duty, which would be unlimited. *See United States v. Johnson*, 580 F.3d 666, 671 (7th Cir. 2009) ("Even if the police's failure to corroborate the informant's claims was negligent, 'a little negligence—actually even a lot of negligence—does not the need for a *Franks* hearing make.'") (quoting *United States v. Swanson*, 210 F.3d 788, 791 (7th Cir. 2000)). Officer Joliff-Blake was not required to make every

conceivable effort to disprove the informant's tip before he sought a warrant. He was entitled to apply for a warrant if the facts as he reasonably understood them would justify a reasonably prudent person in believing, in the totality of the circumstances, that a search of 827 South Keeler was likely to uncover evidence of a crime. Plaintiffs have not pointed to any facts known to Officer Joliff-Blake when he applied for the warrant on June 17, 2012, but hidden from the issuing judge, that affirmatively suggest that J. Doe's story of purchasing heroin from Freddy Sutton at 827 South Keeler was unreliable or incorrect. The issuing judge found that there was probable cause for the search in the totality of the circumstances, and this Court agrees. The facts that plaintiffs claim that he intentionally or recklessly omitted to tell the issuing judge are immaterial to the determination of probable cause.

Even if there were a genuine issue of material fact with respect to probable cause, defendants would still be entitled to qualified immunity with respect to procuring the warrant.

## III.    CONDUCT DURING THE SEARCH

Plaintiffs contend that defendants' conduct was unreasonable during the search of their home. According to plaintiffs, defendants should have realized immediately upon entering the house at 827 South Keeler that the house J. Doe had described as the site of his heroin transaction bore little resemblance to the house they had entered. Further, plaintiffs argue that defendants should not have persisted with the search for nearly two hours (there is some dispute about exactly how long the search took, but by all accounts it took no more than two hours) and they should not have detained plaintiffs during the search.

The Court agrees with defendants that the search was reasonable. Plaintiffs do not claim that their house or their belongings were damaged during the search. (Pls.' LR 56.1 Resp. ¶ 36.) They claim that they were improperly detained, but officers executing a search warrant are

permitted to detain the occupants of a house while the search is ongoing. *See Michigan v. Summers*, 452 U.S. 692, 704-05 (1981).

Plaintiffs contend that the officers should have immediately noticed that they were searching a "family home," not a "drug house," and that there are discrepancies between J. Doe's description and the actual appearance of the house that should have indicated that the officers had made a mistake and induced them to call off the search. But plaintiffs have not explained why a "family home" cannot also be a "drug house," nor have they pointed to any glaring discrepancies or other clear indications that the officers were obviously in the wrong house. Plaintiffs contend that (a) the gate to the backyard was locked with a padlock, which conflicts with J. Doe's story that he entered the backyard through the back gate—but the Complaint for Search Warrant did not explicitly say that J. Doe came through the back gate, and in any case the padlock could easily have been put on the gate in the four days between Officer Joliff-Blake's interview with J. Doe and the execution of the warrant; (b) there was no back door leading to a basement—but the Complaint for Search Warrant did not explicitly say that the back door led directly to a basement, and in any case, because 827 South Keeler is a block-like structure situated on a street corner, the record is consistently confused about which door to call the back, front or side door, so this fact would not have likely raised a concern; and (c) the basement was a "small, cramped, cluttered storage area, not a site to run a drug operation"—but J. Doe said only that he was brought into the basement to wait while Fred went to retrieve the heroin, not that the basement was spacious or uncluttered. (*See* Defs. LR 56.1 Resp. ¶¶ 75-76.)

Further, plaintiffs do not substantively deny that the officers' police canine "alerted," or indicated that it had caught the scent of narcotics, once inside the house. (*See* Pls.' LR 56.1 Resp. ¶ 34 (objecting to any "improper inference" that the reason the police canine "alerted" was

because there was contraband in the house, without denying the substance of the fact or citing to the record).) Plaintiffs suggest in their reply brief that this alert may have been due to prescription narcotics in the home, but the officers executing a valid search warrant based on evidence of illicit drug transactions were not required to conclude from the fact that there were lawful prescription narcotics in the house that there were not also illicit narcotics in the house. The officers searched the house for two hours at most, which is not outside the bounds of reasonableness, *see Muehler v. Mena*, 544 U.S. 93, 100 (2005) (detention during search lasting two to three hours not unreasonable), especially considering that the canine alert may have given the officers additional reason to think that there was contraband in the house.

Plaintiffs also claim that one of the officers used excessive force to stop plaintiff Nelson Edwards from going into the house during the search. According to Mr. Edwards, he arrived during the search and, surprised to see police activity, attempted to run into the house, rushing past a number of police officers on his deck. (*See* Pls.' LR 56.1 Resp. ¶ 46.) One officer raised a hand to forcibly stop him, telling him there was a police dog inside and Mr. Edwards could not enter at the moment. (*Id.*) Even assuming that plaintiffs' account is true, as the Court must (although other witnesses did not report seeing any pushing or shoving (*see id.* ¶¶ 47, 55)), this use of force was not constitutionally unreasonable under the circumstances. The officer who stopped Mr. Edwards saw a man rushing past police officers into a house during a police search of that house pursuant to a warrant. Plaintiffs argue that Mr. Edwards was 72 years old and "frail" at the time, but "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1 (1968)). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's

chambers,' violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) *overruled on other grounds by Graham*, 490 U.S. at 393-94). This is a case in which the Court must allow for the fact that the officer was forced to make a "split-second judgment" about the best way to stop a man who was trying to rush past him into the house without asking permission and whose intentions were unknown. The officer used a minimal amount of force that caused no injury. That is not objectively unreasonable under the circumstances.

## IV.  SUPERVISORY LIABILITY, FAILURE TO INTERVENE, AND INDEMNIFICATION

Because defendants are not liable on the underlying claims of constitutional violations, plaintiffs' supervisory liability, failure to intervene, and indemnification claims also fail.

## CONCLUSION

For the reasons set forth above, the Court grants defendants' motion for summary judgment [253] and denies plaintiffs' motion for partial summary judgment [264]. Civil case terminated.

**SO ORDERED.**                    **ENTERED: March 27, 2017**



**HON. JORGE ALONSO**